# United States District Court

### DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

v.

MOHAMEDKAMAL KABIRA

Criminal Complaint

CASE NUMBER: 07- **49M-MPT**

REDACTED

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about __March 16, 2007__ in the District of Delaware, defendant did:

*possess with intent to distribute, Khat, a substance and mixture containing Cathine, a Schedule I drug, and Cathinone, a schedule IV drug*

in violation of Title ____21____ United States Code, Section(s) __§§ 841(a)(1), (b)(1)(C) and (b)(2)__.

I further state that I am a(n) __Task for Officer, Drug Enforcement Administration__ and that this complaint is based on the following facts:

*See attached Affidavit*

Continued on the attached sheet and made a part hereof:   Yes

Signature of Complainant
Torrie M. James
Task Force Officer
Drug Enforcement Administration

FILED
MAR 21 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Sworn to before me and subscribed in my presence,

__March 21, 2007__   at   Wilmington, DE
Date                              City and State

Honorable Sue L. Robinson
Chief United States District Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT

Your affiant, Torrie James of the Smyrna Police Department and is currently assigned to the Criminal Investigation Division and the DEA taskforce as a TFO specifically assigned to investigate narcotics. I have been a Police Officer for approximately 6 1/2 years. I am a graduate of the Delaware State Police Academy and the DEA's basic narcotic school. I have attended training in the investigation, detection, manufacturing, and abuse of illegal drugs.

During the course of my career as a Special Agent of the DEA, I have participated in numerous investigations of unlawful drug distribution. These investigations have resulted in the conviction and or guilty pleas of numerous defendants in state and federal court. I have conducted or participated in surveillance, undercover transactions, execution of search warrants, debriefings of informants and other sources of information. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are imported and distributed, the methods of payment for such drugs, and some of the methods used to disguise the source and nature of the profits made by narcotics dealers.

The information in this affidavit is personally known to your affiant or was related by the person named.

This affidavit sets forth probable cause to believe Mohamedkamal KABIRA, and other persons, known and unknown are engaged in a conspiracy to possess with intent to distribute multi-kilogram quantities of Khat in the District of Delaware and other locations within the United States.

On March 15, 2007 your affiant, Special Agent Thomas E. Jacobs, and Intelligence Analyst Christopher Callahan met with Cecilia Uffner at her residence in Smyrna, DE. The purpose of the interview was to follow up on information Ms. Uffner had reported to the Wilmington, DE Resident Office that one of her tenants was possibly involved with illegal narcotics.

Ms. Uffner stated that approximately six or seven weeks ago a black male she knows as "Kamal" answered an add in the newspaper regarding a room for rent. Ms. Uffner stated "Kamal", whom was later identified as Mohamedkamal KABIRA, moved into the room by himself and paid his $125.00 per week rent in cash. Ms. Uffner stated KABIRA told her he owns an ethnic restaurant in Washington, DC and two houses, one in Bowie, MD and the other in New Castle County, DE. Ms. Uffner stated KABIRA told her he was attending nursing school in Georgetown, DE and he would only be staying in his room three nights a week.

Ms. Uffner stated KABIRA told her he has a sister in the United States and all other family members live in Ethiopia and he has been in the United States for six years. Ms. Uffner stated she has observed KABIRA with large quantities of U. S. currency.

Ms. Uffner stated this past Sunday (March 11, 2007) her cleaning lady, Gail Greenly, told Ms. Uffner that KABIRA's room was full of big heavy boxes and she could not clean the room due to the large volume of boxes. Ms. Uffner, who is disabled and cannot climb the stairs, stated Ms.

1

Greenly brought down a bag containing a green vegetable substance which Ms. Uffner initially thought was marijuana.

Ms. Uffner stated she called KABIRA on his cellular telephone and complained to him about the boxes and him making a mess of the room. Ms. Uffner stated KABIRA told her he was in Washington, DC and would be back in Smyrna that evening. Ms. Uffner stated that within an hour and half or so, KABIRA returned to the house.

Ms. Uffner also reported that KABIRA took the boxes to a storage facility, which she thought must be nearby given that KABIRA was not gone for a long time. Ms. Uffner stated KABIRA told her the green vegetable material was a medicine that everyone in his country (Ethiopia) chews and places into tea. Ms. Uffner stated KABIRA brought down the same bag of green vegetable material as Ms. Greenly had shown her.

Ms. Uffner stated she told KABIRA he should ship the boxes directly to Washington, DC to save himself money instead of having them shipped to Smyrna and then having to transport the material himself. Ms. Uffner stated KABIRA told her he could not trust anyone there so that is why he has the boxes shipped to his Smyrna address. Ms. Uffner stated KABIRA told her that he pays $300.00 per box and then sells small bags for $10.00.

Ms. Uffner stated there were some empty boxes on the back porch of the house which KABIRA left there and KABIRA stated he was going to return to Washington, DC because Ms. Uffner did not want him to rent the room any longer. Ms. Uffner stated she told KABIRA he could stay but he had to take better care of his room.

Your affiant and Special Agent Thomas E. Jacobs looked at the boxes on the back porch and four of the five boxes contained shipping labels from United Parcel Service. The weight of the four boxes containing shipping labels was 38 pounds, 37 pounds, 37 pounds and 35 pounds. Three of the shipping labels were dated February 19, 2007 and the fourth was dated February 21, 2007. The return address for all of the boxes was Ibrahim FAYSL           The UPS Store #3090 STE 12 9160 HWY 64, Memphis, TN 38002.

Ms. Uffner stated KABIRA drivers a grey four door Honda Accord and is supposed to return on Tuesday (March 20, 2007) to turn in his room key.

Your affiant checked at Sentinel Self Storage 52 South Corey Lane Smyrna, DE and was informed Mohamedkamal KABIRA rented unit 2106 on March 6, 2007.

A check of the Delaware Justice Information System (DELJIS) revealed KABIRA has a 2001 Honda Accord Delaware Registration Number 191713 registered in his name and lists an address of            Cambridge Gardens New Castle, DE 19720. A check of KABIRA's Delaware driver's license       revealed an address of              Cavalier Apartments Newark, DE 19702. A criminal history check of KABIRA revealed he has a prior arrest in Arlington County, VA on 05-29-2003 for driving under the influence. This criminal

2

history printout revealed KABIRA's place of birth as Ethiopia and listed an address of , Washington, DC 20011.

On March 16, 2007, your affiant applied for a state search warrant in the Court of Common Pleas Kent County, DE. Upon review of the affidavit, Judge Charles W. Welch issued a search warrant for Unit 2106 Sentinel Self Storage 52 South Corey Lane Smyrna, DE. Agents of the Dover, DE DEA Task Force executed the search warrant and located 40 large cardboard boxes. The boxes were taken to the Smyrna Police Department and several of the boxes were opened and agents discovered a green vegetable material in each box. The total weight of the boxes and vegetable material was approximately 704 pounds. Your affiant compared the green vegetable material to color photographs of the drug KHAT, and the material appears similar. Intelligence Analyst Chris Callahan e-mailed photographs of the seized material to Special Agent Lisa Pyror of the DEA Washington Field Office. S/A Pryor, who is the case agent on a major investigation involving KHAT reviewed the photographs and stated her opinion was that the material seized is KHAT. There is no presumptive test for the drug KHAT and it must be tested at a laboratory by a qualified chemist.

On March 20, 2007, KABIRA had arranged to drop off his keys with Ms. Uffner, and Ms. Uffner informed your affiant that KABIRA would arrive at approximately 11:00 a.m. When KABIRA arrived, your affiant and officers from the Smyrna Police Department arrested him. KABIRA consented to a search of his vehicle. During the consent search, your affiant observed a blue plastic bag consistent with the bags found pursuant to the search warrant. The bag contained trace amounts of a green vegetable material, similar in appearance to the suspected Khat found in the storage shed.

S/A Jacobs advised KABIRA of his Miranda rights, and KABIRA stated that he understood them and agreed to answer questions. KABIRA stated that the material in the blue plastic bag was Khat, that his family shipped Khat to him from Ethopia, and that he received between 40 and 60 boxes of Khat in one year. KABIRA stated that he put the boxes of Khat in the storage shed and estimated that there were between 40 and 45 boxes in the shed. He further stated that he is a student, has no other employment, and makes a living by selling Khat. He stated that he travels to Washington, D.C. and New York City to sell Khat, and KABIRA further stated that he has shipped quantities of Khat to customers in Buffalo, New York and New Jersey.

Your affiant has learned through researching information available through the Drug Enforcement Administration that Catha Edulis, commonly referred to as KHAT is a large shrub grown in southern Arabia and eastern Africa, primarily in the countries of Somalia, Yemen, Kenya and Ethiopia. The leaves of the plant contain the alkaloids Cathine and Cathinone which are Schedule 1 and IV drugs respectively under the Controlled Substance Act. The DEA has determined there is no legitimate use for KHAT in the United States. KHAT is accepted within these African cultures in the United States and is used by some members of this immigrant community.

The availability of KHAT in the United States has been increasing since 1995. According to the Federal-wide Drug Seizure System (FDSS), law enforcement seizures of KHAT increased from 14 metric tons in 1995 to over 37 metric tons in 2001. According to the El Paso Intelligence

3

Center, seizures of 32, 39, 37, 54, 47, and 32 metric tons of KHAT occurred in 2000, 2001, 2002, 2003, 2004, and through September 2005 respectively.

KHAT is purchased from farmers in the Horn of Africa for approximately $1.00 per kilogram. KHAT is then sold for approximately $200.00 per kilogram to middlemen in Europe where KHAT is not controlled and then shipped to the United States and elsewhere. KHAT generally sells for $300.00 to $600.00 per kilogram in the United States.

KHAT is either shipped via couriers who carry between 20 and 140 kilograms in their luggage or sent via express mail in boxes containing 9-25 kilograms.

## CONCLUSION

Based on the aforementioned facts and your affiant's training and experience, probable cause exits to believe Mohamedkamal KABIRA and others conspired to possess Khat with intent to distribute, which is a controlled substance under Schedule I and or Schedule IV of Title 21, United States Code, in violation of Title 21, United States Code, Section 841(a)(1).

Torrie M James
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
21st day of March, 2007

HONORABLE SUE L. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
DISTRICT OF DELAWARE